**Amrit LAL, Appellant**

v.

**AMERIQUEST MORTGAGE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued June 10, 2004.
Filed Aug. 3, 2004.
Reargument Denied Oct. 13, 2004.

Amrit Lal, appellant, pro se.

William J. Levant, Blue Bell, for appel-lee.

Before: KLEIN, OLSZEWSKI, and KELLY, JJ.

OLSZEWSKI, J.:

¶ 1 Amrit Lal (plaintiff/appellant) appeals from the order of the trial court entered November 25, 2003, which dismissed his complaint pursuant to preliminary objections raised by Ameriquest Mortgage Company (defendant/appellee). We affirm.

¶ 2 On May 17, 2002, appellee placed the real property located at 1419 Burke Road, West Whiteland, Pennsylvania ("the property"), up for sheriff's sale. The sheriff's hand bill listed the property for $170,051.09, which represented the amount owed to appellee by its debtors. This amount was determined in December 1998. During the bidding, appellee drove the price of the property up to $190,000.00, to account for the accrued interest on the debt from December 1998. Appellant, acting on behalf of RST Partners, purchased the property for $190,100.00.

¶ 3 In accordance with the conditions of sale, appellant deposited ten percent of the purchase price ($19,000.00) with the sheriff on May 17, 2002. The conditions of sale required appellant to pay the remainder of the purchase price within twenty-one days from the date of the sale. Neither appellant nor RST Partners paid the remainder of the purchase price within this time period.

¶ 4 In the days following the sheriff's sale, appellant corresponded with appellee and the sheriff's office in the hopes of backing out of RST Partner's obligation to purchase the property. In various letters authored by appellant, he asks appellee if RST Partners may assign its bid to them (May 18, 2002, letter); he informs the sheriff's office that it has assigned its bid to appellee (May 18, 2002, letter); and he purports to exercise his right to rescind the bid he made on behalf of RST Partners (May 20, 2002, letter). In response to appellant's proposal to assign its bid to them, appellee wrote to the sheriff of Chester County, stating that it would allow a resale of the property if appellant would agree in writing: (1) not to bid on the property; (2) to be responsible for all costs with proceeding for the next sale including interest, attorney's fees and costs, and sheriff's fees and costs; and (3) to pay all costs associated with bankruptcy relief if the debtor on the property filed bankruptcy again. Exhibit # 5, Certified Record. The written stipulations were also to include a provision stating that the sheriff would refund the $19,000.00 deposit to appellant as the sheriff sees fit, once the property had been acquired by appellee. Id.

¶ 5 There is no record that appellant entered into these stipulations or any other agreement with appellee regarding the property. The property was put up for sale at a second sheriff's sale on June 21, 2002. Appellant refrained from bidding on the property, and appellee (the lone bidder) acquired it for $1.00. Under the conditions of sale at the May 17, 2002, sheriff's sale, appellant forfeited his ten percent deposit and was required to pay the difference between the bid on which he defaulted and the subsequent sale to appellee, plus all interests, costs, and expenses. The sheriff, however, only deducted $5,192.18 from appellant's $19,000.00 deposit and paid that amount to appellee. The $5,192.18 represents accrued interest from May 17 to June 21, 2002; late charges; property inspection; hazard insurance; and attorney fees.[1] The remaining $13,807.62 was returned to appellant.

1. This information is contained in Appellant's Preliminary Objections, paragraph 10, which

¶ 6 Following these events, appellant, proceeding *pro se*,[2] filed a complaint to recover the $5,192.18 plus interest, legal fees and consultations. He also sought triple damages for consumer fraud ($15,-600.00) and $100,000.00 for violations of his due process rights.[3] Appellee filed the following preliminary objections:

1. Appellant lacked the capacity to sue because RST Partners, and not appellant, was the winning bidder.

2. A bidder has no right to rescind a bid once the hammer has fallen, and therefore, appellant's complaint fails to state a cause of action.

3. A Sheriff's Sale is not a consumer transaction, and therefore, appellant's claim fails to state a claim for damages based on consumer fraud.

4. Appellant failed to set forth any basis in which his due process rights were violated.

*See* "Preliminary Objections of Defendant Ameriquest Mortgage Company to Plaintiff's Complaint," Certified Record. The trial court sustained appellee's preliminary objections and dismissed appellant's complaint.

¶ 7 On appeal, appellant claims that the trial court abused its discretion and committed errors of law:

1. In overlooking the doctrine of novation which replaced the contract originating from the first sale;

2. In overlooking the precedent of Allegheny County where the Sheriff returned full amount of deposit to a defaulting purchaser;

3. In overlooking the status of funds which were in custodia legis by operation of law;

4. In overlooking the unfair trade practice statute 73 P.S. 202–9.2 and its application to the complaint; [and]

5. In overlooking the violation of appellant's due process and constitutional rights and property interests.

Appellant's Brief, at 3.

¶ 8 Before we can address the merits of appellant's case, we must first determine whether appellant has standing to bring these issues before us.

One of the most stalwart propositions of the law is that, in order to maintain an action, a party must have standing; a stake in the outcome of the proceedings. We have previously held that to have

---

was "admitted" by appellant in his Answer to Preliminary Objections by Defendant.

**2.** Although appellant is *pro se,* he is no stranger to our court system. Appellant has represented himself in several appellate court appearances. *See for example, New York Guardian Mortg. Co. v. Brokenborough,* 394 Pa.Super. 105, 575 A.2d 121 (1990); *Lal v. Moyerman,* 257 Pa.Super. 637, 390 A.2d 309 (1978); *McGarity v. Lal,* 257 Pa.Super. 639, 390 A.2d 310 (1978); *Lal v. Borough of Kennett Square,* 786 A.2d 1019 (Pa. Commw.2001); *PHEAA v. Lal,* 714 A.2d 1116 (Pa.Commw.1998); *Com. v. Lal,* 156 Pa. Cmwlth. 366, 627 A.2d 281 (1993); *Lal v. West Chester Area School Dist.,* 100 Pa. Cmwlth. 70, 513 A.2d 1152 (1986); *Mohanty v. Com.,* 38 Pa.Cmwlth. 498, 394 A.2d 650 (1978). The District Court for the Eastern District of Pennsylvania has "noted that Lal is no ordinary pro se litigant, claiming to possess a law degree and a Ph.D., and that he has filed countless actions over an approximate 18–year period beginning in 1978." *Lal v. Borough of Kennett Square,* 786 A.2d at 1021 (citation omitted). Notably, appellant has been sanctioned several times for bringing frivolous claims to court and abusing the legal process. *See Lal v. Borough of Kennett Square,* 786 A.2d at 1021–22; *Borough of Kennett Square v. Lal,* 165 Pa.Cmwlth. 573, 645 A.2d 474 (1994); *Borough of Kennett Square v. Lal,* 665 A.2d 15 (Pa.Commw.1995); *Lal v. Borough of Kennett Square,* 935 F.Supp. 570 (E.D.Pa.1996).

**3.** By claiming over $50,000 in damages, appellant has avoided mandatory arbitration.

standing, a litigant must have a direct, immediate and substantial interest in the outcome of the litigation. An interest is substantial if it surpasses the common interest of the general citizenry in assuring that the law is upheld. An interest is direct if there exists a causal connection between the matter complained of and the harm caused to the party's interest. Finally, an interest is immediate if the interest that the party seeks to protect is within the zone of interests guaranteed by the statute in question.

*Jefferson Bank v. Newton Assocs.*, 454 Pa.Super. 654, 686 A.2d 834, 838 (1996) (citations omitted).

¶ 9 We find that appellant has no standing. It is clear from the record that RST Partners, and not appellant, was the winning bidder at the May 17, 2002, sheriff's sale. N.T., Sheriff Sale of Real Estate, at 1. Appellant merely acted on behalf of RST Partners in bidding on the property and depositing ten percent of the purchase price. Significantly, RST Partners is not a party to this litigation. Despite his bidding for RST Partners, there is no evidence in the record that establishes a connection between appellant and RST Partners, nor is there any evidence that appellant has authority to act on behalf of RST Partners. Moreover, even if appellant had authority to act on behalf of RST Partners, he has not shown how he (personally) has a direct interest in the litigation. Therefore, because appellant has not suffered any personal loss, he has no viable interest in the outcome of this case. Accordingly, we affirm the order of the trial court sustaining appellee's preliminary objections and dismissing appellant's complaint on the basis that appellant lacked the capacity to bring this lawsuit.

¶ 10 Even if appellant had standing to bring this lawsuit, we would still uphold the ruling of the trial court. In his first question on appeal, appellant asserts that the trial court ignored the doctrine of novation when it failed to recognize the new contract between him and appellee, which he claims substituted for the contract RST Partners entered into when it won the bid on the property. How appellant conjures up this "new contract" is beyond the comprehension of this Court.

¶ 11 "It is well settled that in order for an enforceable [contract] to exist, there must be a 'meeting of the minds,' whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." *Mountain Props. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1100 (Pa.Super.2001). In this case, appellant believes that a May 22, 2002, letter, written by appellee's attorney, Mr. Vitti, formed a new contract between appellant and appellee. In that letter, Mr. Vitti wrote *to the Sheriff of Chester County*, stating that appellee would allow a resale of the property if appellant signed a stipulation agreeing not to bid on it, to be responsible for all costs of the resale, and to be responsible for all costs if appellee's debtor declared bankruptcy again. Exhibit # 5, Certified Record.

¶ 12 This letter does not form a new contract between appellee and appellant. Glaringly, Mr. Vitti did not write the letter to appellant. Moreover, there is no evidence in the record of any communication from appellee to appellant after May 17, 2002. Further, appellant never signed the stipulations referred to in the letter. *See* Appellant's Brief, at 11. Accordingly, if appellee never communicated with appellant after May 17, 2002, and if appellant never assented to appellee's stipulations, then appellee and appellant could not have had a meeting of the minds. Consequently, the doctrine of novation is inapplicable

because there was no new contract. Appellant's claim is totally without merit.

¶ 13 Next, appellant argues that the trial court overlooked precedent in Allegheny County, where a sheriff returned the full amount of a deposit to a defaulting purchaser. We point out that Allegheny County precedent has no precedential value in Chester County. Furthermore, the case cited by appellant for this proposition, *In re Davis*, 281 B.R. 626 (Bkrtcy.W.D.Pa. 2002), is a federal bankruptcy case, which also has no precedential value in Pennsylvania. *See Willard v. Interpool, Ltd.*, 758 A.2d 684, 686 (Pa.Super.2000). Moreover, *Davis* serves no persuasive value, as it concerns the right of a *debtor* to set aside a sheriff's sale once the hammer has fallen. *In re Davis*, 281 B.R. 626.

¶ 14 Despite appellant's contentions, the trial court properly found that appellant had no right to rescind his bid after the hammer had fallen. In *New York Guardian Mortgage Company v. Brokenborough*, 394 Pa.Super. 105, 575 A.2d 121 (1990), a mortgagor withdrew a property from a sheriff's sale before the hammer fell. *Id.* at 121. Coincidentally, Amrit Lal was also the appellant in that case, and he claimed that his bid created a binding contract for the sale of a property because it was higher than the advertised price. *Id.* at 122. We disagreed, stating that

> [t]he accepted view in Pennsylvania of a sale by auction is that the bargain is incomplete, and there has been no acceptance of the offer until the hammer falls. Therefore, **until that time**, the bidder may retract a bid, and the auctioneer may withdraw the property, unless the auction is without reserve.

*Id.* (citations omitted) (emphasis added). Accordingly, once the hammer falls and bidding is closed, the winning bidder has entered into a binding contract and may no longer retract his or her bid. Therefore,

the trial court properly sustained appellee's preliminary objections on this ground.

¶ 15 In his third issue raised on appeal, appellant claims that the trial court erred when it overlooked the status of funds (i.e., $5,192.18) that were in *custodia legis* of the Chester County sheriff by operation of law. The doctrine of *custodia legis* states that

> funds in the possession of the Commonwealth or one of its political subdivisions, owing to individuals, are not subject to attachment under the public policy that the government should be free from the annoyance and uncertainty arising out of disputes between the individuals to whom the money is owed and those claiming a right to the same funds by garnishment.

*Buchholtz v. Cam*, 288 Pa.Super. 33, 430 A.2d 1199, 1200 (1981). This doctrine does not help appellant's argument that the sheriff should have returned his full deposit, as the doctrine allows the Commonwealth to retain payments owed to individuals when those individuals have not completed their contractual obligations to the Commonwealth. *See id.* Furthermore, this doctrine is inapplicable to the facts of this case, as the "funds in the possession" of the Chester County sheriff were not "owed" to appellant (or RST Partners). Under the conditions of sale for the May 17, 2002, sheriff's sale, RST Partners forfeited its deposit when it failed to pay the remainder of the purchase price within twenty-one days from the date of the sale. Accordingly, the trial court did not err in "overlooking" the doctrine of *custodia legis*.

¶ 16 In the fourth issue appellant raises on appeal, he argues that the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–9.2, is applicable to the sale of residential real estate, and there-

fore, the trial court erred when it failed to apply it to the facts of this case. Despite appellant's contention, 73 P.S. § 201–9.2 is not applicable to this case. The statute provides for the right of individuals to bring a private action when a "person...purchases or leases goods or services **primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal...**" 73 P.S. § 201–9.2(a) (emphasis added). In this case, RST Partners did not purchase the property for personal, family or household purposes. They purchased it as an investment property. Moreover, even if the statute was applicable to this transaction, appellant has not suffered any ascertainable loss. As we stated previously, RST Partners was the winning bidder; there-fore, any loss would have been suffered by RST Partners and not by appellant.

¶ 17 Finally, appellant argues that the trial court improperly dismissed his due process claim for an amount in excess of $100,000.00. We have reviewed appellant's complaint very closely, and we find no basis on which he could assert a viable due process claim for $100,000.00. Accordingly, we affirm the trial court's ruling.

¶ 18 After a thorough review of the record, we find that appellant lacks standing in this lawsuit. Moreover, even if appellant could show standing, we would find his appeal to be completely without merit. Therefore, we affirm the order of the trial court sustaining appellee's preliminary objections and dismissing appellant's complaint.

¶ 19 Order AFFIRMED.